**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RAYNOR MARKETING, LTD.,

    Plaintiff,

v.

Case No. 3:17-cv-436-J-32PDB

THE PHOENIX INSURANCE
COMPANY and LIBERTY
INSURANCE CORPORATION,

    Defendants.

**O R D E R**

This diversity insurance coverage dispute is before the Court on Defendant Phoenix Insurance Company's ("Phoenix") Motion to Dismiss Count III of Plaintiff's Complaint with Prejudice and Incorporated Memorandum of Law (Doc. 17). Plaintiff Raynor Marketing, LTD. ("Raynor") responded (Doc. 25), Phoenix replied (Doc. 34), and Raynor filed a sur-reply (Doc. 35).

**I.    BACKGROUND**

Around October 16, 2012, James Lee fell and injured his back when the Real Space Pro 9000 Quantum Chair ("Quantum Chair") he was sitting on broke. (Doc. 1 ¶ 19).[1] Raynor, a New York corporation, manufactures, markets,

---

[1] For the purposes of ruling on Phoenix's Motion to Dismiss (Doc. 17), the Court

sells, and distributes wholesale office seating products, including the Quantum Chair. (Doc. 1 ¶ 4, 7, 18). Previously, in June, 2008, Raynor and Office Depot entered into a Vendor Agreement, which includes a provision requiring Raynor to indemnify Office Depot for lawsuits arising from Raynor products sold to Office Depot. (Doc. 1 ¶ 16). Then in August, 2011, Raynor and Office Depot entered into a Purchase Order Agreement wherein Office Depot agreed to purchase and sell Raynor products. (Doc. 1 ¶ 17).

For the period of April 7, 2012 through April 7, 2013, Phoenix issued a Commercial General Liability Policy, number Y-630-7075X381-PHX-12, to Raynor. (Doc. 1 ¶ 8). The policy has a $1 million per occurrence limit. (Doc. 1 ¶ 9). The Policy contains an endorsement that purports to add vendors as an additional insured for bodily injury or property damage arising out of Raynor's products. (Doc. 1 ¶ 10). For this same period, Liberty Mutual issued an umbrella liability policy to Raynor providing coverage up to $5 million per occurrence in excess of the Phoenix policy. (Doc. 1 ¶ 11).

Approximately one week after being injured, Lee contacted Raynor and Office Depot concerning the broken Quantum Chair. (Doc. 1 ¶ 20). Several days later, Raynor informed Lee that his information was provided to Phoenix, and Raynor notified Phoenix of Lee's claim. (Doc. 1 ¶ 22). Phoenix assigned an

---

accepts the allegations in the Complaint (Doc. 1) as true.

adjuster to handle the claim. (Doc. 1 ¶ 24). Around April 10, 2014, Lee sent a settlement demand letter to Phoenix seeking $2 million. (Doc. 1 ¶ 25). Phoenix appointed a lawyer to defend Raynor for the Lee claim and Raynor requested that Phoenix appoint a separate lawyer to defend Office Depot. (Doc. 1 ¶ 2–30). Around May 23, 2014, Lee filed suit in Duval County against Raynor and Office Depot. (Doc. 1 ¶ 31). Around October 30, 2015, Lee offered to settle the suit for $6 million. (Doc. 1 ¶ 43).

While the settlement discussions were ongoing, Raynor, Office Depot, Phoenix, and Liberty Mutual disputed how the claim should be handled. (Doc. 1 ¶ 36–45). Phoenix believed that fact discovery was necessary before settlement, but Raynor and Office Depot believed that a quick settlement without fact discovery was in everyone's best interest. (Doc. 1 ¶ 36–45). The parties continue to dispute the extent to which Phoenix is responsible for covering Office Depot—Phoenix believes that it is only required to cover Office Depot to the extent of Raynor's fault, whereas Raynor and Office Depot believe that Phoenix is required to completely indemnify Office Depot for the Lee claim. (Doc. 1 ¶ 45–50).

Lee and Phoenix participated in mediation, at which Phoenix stated that it valued Lee's claim at $1,500,000, but only would contribute $750,000 "because Phoenix attributed 50% of the negligence to Raynor and the remaining 50% to Office Depot." (Doc. 1 ¶ 52). Raynor and Office Depot dispute Phoenix's

position and expressed this to Phoenix several times. (Doc. 1 ¶ 53–65). On March 24, 2016, the parties held a second mediation at which Phoenix tendered the same offer. (Doc. 1 ¶ 66–68). On May 13, 2016 Lee's claim was settled for $2,100,000, but Phoenix only contributed $850,000 and Raynor tendered the remainder. (Doc. 1 ¶ 74). Liberty Mutual did not contribute to the settlement, claiming that its policy did not come into effect until the Phoenix policy limits were exhausted. (Doc. 1 ¶ 67, 74).

On April 13, 2017, Raynor filed a three count Complaint alleging breach of contract (Count I) and bad faith in violation of section 624.155, Florida Statutes (Count III) against Phoenix, and breach of contract (Count II) against Liberty Mutual. (Doc. 1). Phoenix seeks dismissal only for Count III—Raynor's bad faith claim. (Doc. 17).

## II. ANALYSIS

### A. Choice of Law

Federal courts sitting in diversity apply the forum state's choice of law rules. Rando v. Gov't Emps. Ins. Co., 556 F.3d 1173, 1176 (11th Cir. 2009). For contracts, Florida follows the lex loci contractus standard, meaning that the place of contracting is the law that governs interpretation of the contract. Id. However, "questions related to the manner or method of performance under a contract are determined by the law of the place of performance." Higgins v. W. Bend Mut. Ins. Co., 85 So. 3d 1156, 1158 (Fla. 5th DCA 2012) (citing Gov't

4

Emps. Ins. Co. v. Grounds, 332 So. 2d 13, 14 (Fla. 1976)). Contract choice of law principles apply to bad faith actions. Grounds, 332 So. 2d at 14–15. Since this is a third party bad faith claim, the law of the place of performance will control. MI Windows & Doors, LLC. v. Liberty Mut. Fire Ins. Co., 88 F. Supp. 3d 1326, 1328–31 (M.D. Fla. 2015).[2]

Florida law governs the substantive bad faith claim. See Grounds, 332 So. 2d at 14. The insurance adjuster was located in Florida, the coverage determinations took place in Florida, the Underlying Action was filed in Florida, the settlement discussions took place in Florida, both mediations took place in Florida, and the settlement transpired in Florida. (Docs. 17 at 5; 25 at 7). As the performance at issue took place in Florida, Florida law applies. See Grounds, 332 So. 2d at 14; (Docs. 17 at 5; 25 at 7).

---

[2] Although an action by an insured against its insurers, this is a "third party" bad faith action "because the claim is based on the insurer's alleged bad faith in handling the third party's claim against the insured." GEICO Gen. Ins. Co. v. Harvey, 109 So. 3d 236, 239 n.1 (Fla. 4th DCA 2013). A "first party" bad faith claim occurs when the insured is also the injured party. See MI Windows, 88 F. Supp. 3d at 1330 (discussing third party claims). There appears to be a split among courts whether Grounds applies only to third party bad faith claims. MI Windows, 88 F. Supp. 3d at 1329–30; see Higgins, 85 So. 3d at 1159 (determining that Grounds does not apply to first party claims). It is unclear whether this split was resolved by the Florida Supreme Court's statement that "first-party bad faith claims under section 624.155 should be treated in the same manner as third-party bad faith claims." Fridman v. Safeco Ins. Co. of Ill., 185 So. 3d 1214, 1222 (Fla. 2016). However, an analysis of this split is unnecessary because this case pertains to a third party claim. See MI Windows, 88 F. Supp. 3d at 1330; Harvey, 109 So. 3d at 239 n.1.

### B. Timeliness of the Claim

Phoenix asserts that Raynor's bad faith claim is premature because it necessarily depends upon unresolved coverage issues. (Doc. 17 at 13). Phoenix lists five unresolved issues that make Raynor's bad faith claim unripe, four concern the extent to which Office Depot is owed coverage. (Doc. 17 at 14–15). Conversely, Raynor argues that its bad faith claim "is independent of . . . coverage for Office Depot." (Doc. 25 at 19). Additionally, Raynor believes its bad faith claim is not premature because even though the claim "stem[s] from [Phoenix's] coverage determination with respect to Office Depot in the underlying action, a finding of coverage or non-coverage by the Court will have no impact on the evaluation of Phoenix's bad faith conduct . . . ." (Doc. 35 at 2).

In Florida, issues of coverage, liability, and damages in the underlying action must be resolved before the court can adjudicate the merits of the bad faith claim. See Shavitz v. GEICO Gen. Ins. Co., No. 15-80163-CIV, 2015 WL 4555370, at *3 (S.D. Fla. July 28, 2015); Fridman, 185 So. 3d at 1222; Vest v. Travelers Ins. Co., 753 So. 2d 1270, 1276 (Fla. 2000).

However, this case is different from the typical premature bad faith claim because the underlying case has been resolved and the unsettled coverage issues constitute the basis for the bad faith claim. (Doc. 1 ¶ 95–96). Raynor alleges that Phoenix's bad faith was its coverage position for the underlying suit and its arbitrary allocation of fault. (Doc. 1 ¶ 95–96). Thus, determining Office

6

Depot's coverage and allocation of fault bears upon both the breach of contract and the bad faith counts. Normally when a case has an unresolved issue of coverage, the bad faith claim should be dismissed; however, doing so in this case would be inefficient—making discovery and depositions duplicative and creating the need for a third suit arising out of this one incident.

### III. CONCLUSION

Accordingly, it is hereby

**ORDERED:**

1. Phoenix's motion to dismiss Count III is **DENIED**.

2. Phoenix shall file its Answer not later than **January 22, 2018**.

3. The stay of discovery, (Doc. 46), is lifted:

    a. Not later than **January 22, 2018**, Phoenix shall provide five deposition dates for each deposition to occur not later than **February 22, 2018**; and

    b. Not later than **February 2, 2018**, Phoenix shall provide the identified documents. (See Docs. 39, 43, 45, 46).

4. All other dates and deadlines of the Case Management Scheduling Order (Doc. 37) will remain.

**DONE AND ORDERED** in Jacksonville, Florida this 2nd day of January, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

jb
Copies:

Counsel of record